Daryl Porter, a minor, by Melba Porter, parent and natural guardian, and Melba Porter, parent, Appellant *v.* The Board of School Directors of the Clairton School District et al., Appellees.

Argued May 5, 1982, before Judges Rogers, Craig and Doyle, sitting as a panel of three.

*Eugene A. Lincoln,* for appellant.

*Ira Weiss, Goldman, Weiss & Gross,* for appellees.

OPINION BY JUDGE ROGERS, June 10, 1982:

Daryl Porter appeals from an order of the Court of Common Pleas of Allegheny County affirming the action of the Board of School Directors of the Clairton School District expelling him from the Clairton Senior High School on account of his involvement in an altercation following an interscholastic basketball game in the evening of February 12, 1980.

A hearing was conducted by an examiner on March 3, 1980, at which time Daryl, the high school principal and the superintendent of schools, an adult eyewitness to the incident, and a number of student participants testified. On the basis of this testimony the examiner found that Daryl, then a seventeen-year-old high school sophomore, left the basketball game before its conclusion, found and then secreted in nearby foliage a number of boards or pickets, challenged as they left the game three high school seniors with whom Daryl had earlier that evening engaged in verbal sparring and, when the challenge was accepted, wielded the pickets as weapons in a brawl that eventually encompassed a large number of students and a geographic area of several city blocks. During the fracas Daryl struck a fellow student, Mark Pazo, in the hand causing two fractures. In his testimony Daryl conceded the occurrence of these events and further testified that he also struck Mr. Pazo in the face with a picket and, at a later point when Mr. Pazo was lying on the ground, kicked him in the head. Daryl's testimony, in part, was as follows:

A: So, I left third quarter. When I was going out the door, Perkins stopped me, and he said, you don't got no chance with this boy. So, I said, I ain't worried about it.

So, I went outside and I was walking down— I can't think of the name of the street—and I found a stick.

So, I went back, and I stuck them in the weeds. So, after the game Eric came out with Pazo and a few other people, and he had off his coat.

Q: Why did you get this stick and put it in the weeds?

A: Because I thought if I had a stick, I didn't think we was going to fight, and if we did fight, I had a chance.

Q: Were you afraid?

A: No.

. . . .

Q: Go on.

A: So, Pazo grabbed me, and he had my coat in the weeds. So, I dropped the stick.

So, when he heard the garbage can, he let me go, and Jamie had the stick. I said, Jamie, hand me the stick; and he threw me the stick, and I hit him in the face; and then, Mr. Horn came out, and he said, don't do it.

So, I ran, and they chased me up to St. Clair.

As a consequence of the events that evening Daryl Porter was taken into custody by the police and Mark Pazo was hospitalized.

At the hearing it was further disclosed that the day following the incident just described, February 13, 1980, Daryl's mother called the school principal, Mr. DeWayne Jeter, on the telephone and arranged to confer with him that afternoon to solicit his advice on the proper disciplinary measures to be taken with respect to Daryl. At the conference, attended also by Daryl, a "Type-B" suspension was imposed which, under the terms of the school district's Handbook for Students and Parents "is for an intial period of ten days." When asked why he had imposed a penalty of this severity, Mr. Jeter responded that he had based his

decision on Daryl's disciplinary record including two previous suspensions, the fact that Daryl admitted to planning the assault and secreting a weapon, and further admissions that Daryl had been illegally drinking on the evening of the incident.

On February 20, 1980, Hyman Haffner, the district's superintendent of schools, conducted a further hearing attended by Daryl, his mother and several witnesses to the incident. Mr. Haffner determined to refer the matter to the Board of School Directors for the initiation of expulsion proceedings. By letter dated February 25, 1980, Daryl was formally notified that a hearing before the school directors had been scheduled for the evening of March 3, 1980, to consider the charge "that on February 12, 1980 at or about 9:30 p.m. [Daryl] did assault Mark Pazo and struck him with a board causing physical injury in violation of school policy." Daryl was further advised that the proceedings might result in his permanent expulsion from school, that he had the right to be represented by counsel and to call and examine witnesses, and he was informed of the names of those witnesses expected to present testimony supportive of the charge.

As we have indicated, the March 3, 1980 hearing was subsequently held and, on the basis of the evidence there adduced including Daryl's admissions, the hearing examiner concluded that Daryl had committed the offense charged. By letter dated March 4, 1980, Daryl was informed that on the basis of the factual findings of the hearing examiner, the Board of School Directors had formally acted to expel him permanently from public school attendance in the district. An order of the Court of Common Pleas of Allegheny County was sought and obtained staying the action of expulsion pending disposition of an appeal to that court taken pursuant to the Local Agency Law.[1] Following submission of briefs and oral argument and consideration

---

[1] 2 Pa. C. S. §§101-754.

of the record made before the hearing examiner, Judge
LEONARD C. STAISEY for the common pleas court dis-
missed Daryl's appeal and affirmed the action of the
Board. This appeal followed.

Daryl renews two arguments:[2] (1) that the action
of the school directors was in violation of regulations
promulgated by the State Board of Education in 1974
and entitled "Student Rights and Responsibilities,"

---

[2] The appelant has apparently abandoned the argument pressed
before the Court below that the action of the school directors was
unlawful as motivated by racial bias.

We reject the appellant's bald assertion that the appearance of
the superintendent at the hearing, where his testimony was limited
to a recitation of the fact that he had conducted a hearing on Feb-
ruary 20, 1980, and had thereafter referred the matter to the Board
for the initiation of expulsion proceedings, created an impermissible
appearance of prejudice requiring reversal of the Board's decision.

The appellant also contends that the superintendent submitted
additional evidence to the Board following the public hearing and
that the Board's decision was unlawfully based on this additional
evidence. The record reveals that at the close of the hearing the
appellant's counsel was informed that the superintendent and the
school principal were prepared to offer evidence of Daryl's academic
record which, while irrelevant to the factual issue before the ex-
aminer, was necessary to the Board's deliberations as to the ap-
propriate penalty if Daryl were found to be guilty of the offense
charged. The appellant's attorney was then asked "do you wish to
be here or have Darrell [sic] Porter here to hear the testimony that
may be offered concerning his school history so that you can cross-
examine or offer other testimony? Of course, that doesn't become
relevant until after findings of fact are reached, and if the witness
appears now, it will be off the record, and it would not be considered
by the Hearing Examiner." The appellant's counsel approved of this
procedure and declined the invitation to remain. Any objection was
thereby waived. The assertion in the appellant's brief that
"[n]either appellant nor his counsel was permitted to be present
[during the post-hearing] session [and t]herefore, appellant had no
opportunity to cross-examine the school superintendent at the pri-
vate session or to present additional rebuttal evidence" is simply
contrary to the clear import of the record.

22 Pa. Code §§12.1-12.33, and; (2) that under all of the relevant circumstances and especially in the light of the failure of the high school administration or the Board to discipline any of the other participants in the February 12, 1980, affair and the fact that the students victimized by Daryl's aggression were much larger than he[3] and did not suffer permanent injury, the action of the Board in expelling Daryl was an abuse of that body's sound discretion.

The regulations concerning student exclusions from school are found at 22 Pa. Code §12.6. They create three categories of such exclusions—"temporary suspensions" for three school days or less with no requirement of a prior hearing, "full suspensions" for a period of up to ten school days following an informal hearing between the principal and the student and his parents, and "expulsions" for a period in excess of ten school days following a formal hearing. Additional characteristics and requirements of these classes of exclusionary measures are specified as follows:

(c) No student may receive a temporary suspension unless the student has been informed of the reasons for the suspension and has been given an opportunity to respond before the suspension becomes effective. All full suspensions require a prior informal hearing, and all expulsions require a prior formal hearing, in accordance with the procedures set forth in §12.8 of this title (relating to hearings).

(d) The maximum period a student may be suspended for an offense shall not exceed ten

---

[3] Testimony adduced before the hearing examiner revealed that Daryl's approximate height and weight are five feet four inches and 135 pounds. The three students he challenged ranged in height from six feet to six feet three inches and in weight from 185 pounds to 230 pounds.

school days. A temporary suspension may be followed by a full suspension for the same offense, provided that the ten school days limitation is not exceeded. Temporary or full suspensions may not be cumulated or made to run consecutively beyond this ten school day limitation.

(e) During the period prior to the temporary suspension, the full suspension or the hearing and decision of the board of school directors in an expulsion case, the student shall be placed in his or her normal class.

(f) Students shall be permitted to make up exams and work missed while being disciplined by temporary or full suspension, within guidelines established by the board of school directors.

(g) If, when expulsion proceedings are initiated, it is determined, after an informal hearing, that a student's presence in his or her normal class would constitute a threat to the health, safety, morals or welfare of others, and it is not possible to hold a formal hearing within the period of a full suspension, the student may be excluded from school for more than ten school days, provided the formal hearing is not unreasonably delayed. Any student so excluded shall be provided with alternative instruction.

The appellant contends that these regulations were violated because the informal hearing conducted on February 13, 1980, was improper as not preceded by "[n]otification of the reasons for the suspension in writing, given to the parents or guardian and to the student" as required by 22 Pa. Code §12.8(g)(i).[4] In

---

[4] The appellant's argument on this score is not altogether clear. In his brief the appellant states that "[t]here is no evidence that the school principal offered the appellant's parents the opportunity

addition the appellant notes that the regulations clearly forbid the exclusion of a student from school by means of a suspension for a period in excess of ten school days; that the expulsion hearing held on March 3, 1980, was thirteen school days after the decision to suspend Daryl was made by Mr. Jeter and, as Daryl testified at the hearing, with the exception of the conferences with Mr. Jeter and Mr. Haffner, he had not returned to school following the incident on February 12. 1980. The school district does not seriously contest that the regulations were violated but argues that the violations were minor and harmless and that, in any event, only the expulsion decision is now at issue and the appellant, if he felt that his suspension was unlawful, should have sought reinstatement to school at the time on that basis.

The appellant has not brought to our attention any provision of the regulations *related to expulsions* which was here violated and we are unpersuaded by the appellant's argument, without supporting authority, that an expulsion decision, otherwise proper, cannot stand if the expelled student was also suspended

---

to be present and participate in an informal hearing. And none of the due process safeguards of Section 12.8(g) were met or observed by the school principal." However, Mr. Jeter's unrefuted testimony with regard to the events of February 13, 1980, the day after the altercation was that:

A: At that time I received a call from Darrell's [sic] mother, and she asked, could she come in and talk with me, if I recall, in regards to Darrell, and I set up an appointment with her that afternoon, at which time she brought Darrell in to school.

Darrell was not in school that morning, and at that particular time after the conference with Darrell, and based on the evidence and the facts that were presented by Darrell, I placed Darrell on type B suspension.

It does appear that no *written* notification of the charges was presented to Daryl at this time.

for the same offense and if the period of suspension exceeded the regulatory maximum. As to expulsion decisions the regulations require only that they be, as the decision here challenged concededly was, preceded by notice of the charges and a formal hearing. Moreover, there is no indication in the record that at the end of the ten-day period of suspension specified by Mr. Jeter, Daryl desired to or attempted to return to school and was denied access or was in any other way discouraged from attending classes during the two or three days preceding the expulsion hearing. We do not accept that the failure, for undisclosed reasons, of a student to return to school for a three-day period following a suspension renders ineffectual the later action of the school district, conforming in all respects to regulations, expelling the student.

The appellant's contention that the school district abused its discretion by expelling Daryl under these circumstances is also unavailing. The scope of our review of the Board's adjudication, where a complete record is made before the Board, is limited to observing whether constitutional rights were violated or an error of law committed, and whether necessary findings of fact are supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b). This court may not substitute its judgment for that of the elected school authorities as to the appropriateness of the penalty of expulsion where, as in this case, a student with a prior disciplinary record and following the illegal consumption of alcohol lies in wait for, and then assaults fellow students. *See McKeesport Area School District Board of Directors v. Collins,* 55 Pa. Commonwealth Ct. 548, 423 A.2d 1112 (1980); *Abremski v. Southeastern School District,* 54 Pa. Commonwealth Ct. 292, 421 A.2d 485 (1980); *Appeal of Marple Newtown School District,* 27 Pa. Commonwealth Ct. 588, 367 A.2d 399 (1976). Neither are

we particularly impressed by the assertion, in the absence of allegations of unlawful discrimination, that other possibly culpable parties have, for whatever reasons, escaped punishment or by the argument that, since Daryl's opponents were larger than he, his violent designs were unlikely to be realized.

In conclusion, the appellant was here expelled from school after admittedly assaulting other students, a plain violation of the school rules of conduct. The assault was intended to and did in fact result in physical injury to at least one of his classmates. The school authorities concluded, based on the evidence adduced at an exhaustive and scrupulously fair hearing, that the appellant's past record, his premeditation of and preparation for the assault, and his use of a weapon, constituted circumstances justifying his expulsion from school. We are compelled, we believe, to uphold the school directors' action.

Order affirmed.

ORDER

AND Now, this 10th day of June, 1982, the order of the Court of Common Pleas of Allegheny County is affirmed.