513 A.2d 501

Edith Daniels, Appellant *v.* Philadelphia Fair Housing Commission, Appellee.

Argued April 8, 1986, before Judges ROGERS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Leslie M. Gerstein,* for appellant.

*Steven K. Ludwig,* Assistant City Solicitor, with him, *Flora Barth Wolf,* Chief Assistant City Solicitor, and *Barbara W. Mather,* City Solicitor, for appellee.

OPINION BY JUDGE PALLADINO, July 24, 1986:

Edith Daniels (Appellant) appeals from an order of the Court of Common Pleas of Philadelphia County which affirmed a decision by the Philadelphia Fair Housing Commission (Commission) requiring Appellant to assume responsibility for the payment of her electricity and gas bills. We affirm.

Appellant rents an apartment in the City of Philadelphia. The lease agreement between Appellant and her landlord runs from month to month, and specifies that Appellant is responsible for the payment of her utility bills. Initially, the landlord did not enforce this provision of the lease and paid the utility bills herself. On December 1, 1983, however, the landlord sent Appellant a letter notifying her that, thirty days hence, she would have to begin paying her own utility bills. Appellant then filed a complaint with the Commission, alleging that the landlord had increased Appellant's rent in violation of Section 9-804(1)(c) of the Philadelphia Code (Code), which prohibits a rent increase while violations of the Code exist within the premises.[1]

---

[1] In October and December of 1983, inspectors from the Department of Licenses and Inspections inspected the licensed premises and discovered several violations of the City's housing code. While some of the violations were subsequently corrected, at least one was still in existence at the time of Appellant's hearing before the Commission.

The Commission determined that the landlord had not increased the rent, but was merely enforcing the provisions of the already-existing lease. Accordingly, the Commission ordered Appellant to begin paying her gas and electric bills herself. On appeal, the court of common pleas took no additional evidence and affirmed the Commission's decision on the basis of the record.

On appeal to this Court, Appellant contends that the Commission erred, as a matter of law, in holding her responsible for the payment of her utility bills, because the landlord had waived the lease provision by initially paying those bills herself, and because enforcement of the lease provision while there are housing code violations on the premises violates Section 9-804(1)(c) of the Code. Appellant argues further that the decision of the court of common pleas is not supported by substantial evidence, because no transcript of the hearing before the Commission was made and the record is otherwise inadequate.

Pursuant to Section 754(b) of the Local Agency Law,[2] our scope of review is limited to a determination of whether constitutional rights were violated or an error of law committed, and whether necessary findings of fact are supported by substantial evidence. *Porter v. Board of School Directors of the Clairton School District*, 67 Pa. Commonwealth Ct. 147, 445 A.2d 1386 (1982).

With respect to the question of whether the landlord waived her right to enforce the lease provision concerning payment of utility bills, we note that, under the general principles of contract law, a party who has made a waiver affecting an executory portion of a contract may retract the waiver by notifying the other party that strict performance will be required of any term waived,

---

[2] 2 Pa. C. S. §754(b).

unless such a retraction would be unjust because of a material change of position made in reliance on the waiver.[3] Accordingly, the effectiveness of a retraction depends, to a great extent, on equitable considerations. *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968).

In the case at bar, the record shows that, for a period of time, the landlord voluntarily assumed responsibility for paying the utility bills of the leased premises, and therefore waived the lease provision requiring Appellant to pay such bills. However, when the landlord informed Appellant that, as of January 1, 1983, Appellant would be required to pay her own utility bills, the prior waiver of the lease term was effectively retracted and Appellant was responsible for the utility expenses. In light of the fact that Appellant initially agreed to assume such expenses when she entered into the lease, it is not now unjust to impose upon her the duty to pay her utility bills, especially when there is no indication that she has in any way changed her position in reliance on the belief that the landlord would continue to as-

---

[3] *See, e.g.,* Section 84(2) of the Restatement (Second) of Contracts, which addresses the situation of a promisor who has waived a condition to the performance of his promise, and which states that:

If such a promise is made before the time for the occurrence of the condition has expired and the condition is within the control of the promisee or a beneficiary, the promisor can make his duty again subject to the condition by notifying the promisee or beneficiary of his intention to do so if

(a) the notification is received while there is still a reasonable time to cause the condition to occur under the antecedent terms or an extension given by the promisor; and

(b) reinstatement of the requirement of the condition is not unjust because of a material change of position by the promisee or beneficiary. . . .

Restatement (Second) of Contracts §84(2) (1981).

sume responsibility for those bills. Accordingly, the court of common pleas did not commit an error of law in concluding that the notice sent by the landlord to Appellant was sufficient to require Appellant to make all future utility payments.

As for the question of whether enforcement of the lease term while there are housing code violations on the leased premises violates Section 9-804(1)(c) of the Code, we note that the section provides as follows:

(1) Whenever any premises are found in violation of any provision of The Philadelphia Code and a notice of violation has been issued by any department or agency of the City, it shall be unlawful for any owner, landlord, agent or other person operating or managing such premises to: . . . (c) make, alter, amend or modify any term or condition of any existing lease or arrangement of tenancy with any person in possession of the premises at the time notice of violation is issued until the violation has been corrected.
. . .

Although a housing code violation may have existed on the leased premises, the Commission determined that the landlord was merely attempting to enforce the lease provision requiring Appellant to pay her own utility bills. Therefore, the Commission properly concluded that the landlord was not attempting to "make, alter, amend or modify any term or condition of any existing lease," and that no violation of Section 9-804(1)(c) had been committed.

Finally, Appellant's contention regarding the inadequacy of the record is likewise without merit. Appellant's argument on this point revolves around the fact that no stenographic transcript was made of Appellant's hearing before the Commission but, rather, a Commission employee took notes at the hearing, which Appel-

lant alleges are incomplete and inadequate. Admittedly, Section 754 of the Local Agency Law distinguishes between records which are complete and those which are incomplete, and indicates that, in an appeal, if there is a complete record the court of common pleas should review the case as an appellate court, while if the record is incomplete the court should either hear the appeal *de novo* or remand the case to the agency for the making of a complete record.[4] We conclude that, in the instant case, the record is complete for the purposes of our review.

Our case law, with reference to appellate review of local agency decisions, defines the "full and complete record" required under Section 754 as "a full and complete record compiled before the agency in accordance

---

[4] The full text of this section is as follows:

Disposition of appeal

(a) Incomplete record.—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa. C. S. §706 (relating to disposition of appeals).

with the law." *McAllister v. Civil Service Commission,* 64 Pa. Commonwealth Ct. 48, 438 A.2d 1043 (1982). The law does not require that a stenographic transcript be made of proceedings before a local agency. Indeed, Section 553 of the Local Agency Law[5] states only that:

> No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony may be stenographically recorded and a full and complete record may be kept of the proceedings. In the event all testimony is not stenographically recorded and a full and complete record of the proceedings is not provided by the local agency, such testimony shall be stenographically recorded and a full and complete record of the proceedings shall be kept at the request of any party agreeing to pay the costs thereof.

Accordingly, the Commission was under no obligation to have Appellant's hearing before it stenographically recorded, and a verbatim transcript of the hearing is not an essential prerequisite for a valid and reviewable adjudication, provided that an adequate record otherwise exists.

In the case at bar, the record contains a copy of the lease agreement, documents from the Department of Licenses and Inspections which indicate housing code violations on the leased premises, a letter sent by the landlord to Appellant informing her that she would be responsible for her utility bills as of January 1, 1983, and handwritten notes of Appellant's hearing before the Commission which were signed by the Commission's vice-chairman. Clearly, the evidence of record was sufficient to allow the court of common pleas to perform its

---

[5] 2 Pa. C. S. §553.

function and this Court to perform our function of appellate review and rule upon the questions presented on appeal, which is all that is required. *Sharp's Convalescent Home v. Department of Public Welfare*, 7 Pa. Commonwealth Ct. 623, 300 A.2d 909 (1973).

Because the necessary findings of the Commission are supported by substantial evidence, and because no error of law has been committed, the order of the court of common pleas is affirmed.

## ORDER

AND NOW, July 24, 1986, the order of the Court of Common Pleas of Philadelphia County, at September Term, 1984, No. 123, dated April 12, 1985, is affirmed.