**G.S. v. West Shore School District**

*Michael Bangs,* for plaintiffs.
*Nancy McCann,* for defendants.

HESS, *J.,* October 29, 1993—This case is before the court on the request of the plaintiffs for a preliminary injunction to set aside the action of the West Shore School District in expelling the minor plaintiff, W.S., from the seventh grade at Lemoyne Middle School. The case is about a child who brought to school an extremely convincing replica of a revolver-type firearm complete with bullets. Though secretive with the weapon, he proceeded to either show the replica weapon to other students or indicate verbally that he had it in his possession. His stated purpose was to "blow a hole" in the head of a fellow student with whom he had had an altercation in the recent past.

This is not a case in which a student possessed an over-the-counter tablet and has been expelled by the school board for the possession of a controlled substance. See *Nestlerode v. West Shore School District,* 40 Cumberland L.J. 91 (1989), wherein we reinstated a student for the possession of No-Doz when the student had been charged and suspended for the possession of a controlled substance. Nor is this a case where the child in question brought a look-alike six-shooter to school so that he could be more convincing in the lead role in "Oklahoma." Were the expulsion in this case grounded *solely* on the alleged possession, by the student, of "a weapon," then we would, no doubt, be required to grant the motion for preliminary injunction and send W. back to school. A replica firearm is not a weapon.

From the beginning of these disciplinary proceedings, the school authorities have understood that the firearm was a replica and have never claimed otherwise. Ad-

mittedly, the written notices of the expulsion hearing made reference to a violation of the "school district's weapons policy" and alleged that W. had been in possession of and displayed "a gun and ammunition." At least one of the notices, however, was supplemented by statements of proposed witnesses of the school board which made clear the fact that the proposed disciplinary action was based on the student's possession of what appeared to be a firearm during the course of which he made alarming comments about doing bodily harm to a fellow student.

A hearing was ultimately held before four members of the school board authorized to take testimony and make findings concerning the incident. Despite the efforts of petitioners' counsel to delimit the issues at the outset of the hearing, the thrust of the accusation was clear. At no time did anyone contend that W. had possessed a real firearm or that he had actually attempted to cause bodily injury to anyone. Instead, the board committee concluded that the child had threatened another student by, among other things, drawing attention to a replica gun and bullets which he had brought to school on September 16, 1993. The board went on to conclude that these actions violated policies of the school district permitting expulsion for "acts which constitute a threat to the health, safety, and welfare of students and staff members" and/or "acts which are in violation of the state penal code." In addition, the board found that there had been violations of other provisions which could lead to the expulsion of students from schools in the West Shore School District. Specifically mentioned were "threatening or assuming a threatening attitude towards students or staff members," "possession/use of weapons," and "any single action which creates severe danger to other persons or causes severe disruption to the educational process...."

At the regular meeting of the school board on October 21, 1993, the board voted nine to zero to adopt the recommendation of the board committee and approve the petitioner's temporary expulsion from the district. Pursuant to the adjudication, W. may be readmitted to the district at the commencement of the 1994-95 school year provided that he has made satisfactory academic progress in the schoolwork which he must do out of school and that he otherwise demonstrate a positive attitude. This action in equity has been filed seeking to set aside the action of the school board thereby permitting W. to return to school.

As we have observed in the past, it is not our function to second guess school administrators. The court is not to act as a "super school board" with knowledge superior to that of public school administrators, *Commonwealth v. Hall,* 309 Pa. Super. 407, 455 A.2d 674 (1983), and cannot, absent a gross abuse of discretion, substitute its own judgment for that of school districts. *Hall, supra* at 412, 455 A.2d at 677. On the other hand, there is a duty on our part to intervene if we conclude that due process has been abridged by governmental authorities no matter how well intentioned. In this regard, one method by which a student may be restored to school and a suspension vacated is by the filing of a case in equity and the procuring of an injunction. *Oravetz v. West Allegheny School District,* 74 D.&.C.2d 733 (1975). Despite this remedy, the burden of proof to establish the requisite elements, particularly for a *preliminary* injunction, remains, of course, with the plaintiff. In order to be entitled to injunctive relief, he must establish, at a minimum, that: 1) a clear right to the relief requested exists; 2) imminent and irreparable injury incapable of compensation by the award of damages will occur if the injunction is not

granted; and 3) greater injury will result from the court's denial of the injunction than from the court's granting it. See *Bell v. Thornburgh,* 491 Pa. 263, 420 A.2d 443 (1980); *Riverside School Board v. Kobeski,* 146 Pa. Commw. 106, 604 A.2d 1173 (1992).

With respect to a comparison of the injuries, the plaintiff argues that any detriment to W. is far greater than that to the school district were we to fail to restore him to the classroom. The school district, on the other hand, argues that W.'s return to school will "send the message to the entire student body that threats and intimidations of violence are acceptable in the district." Because we believe the plaintiffs' request for preliminary injunction fails on other grounds, we need not resolve this particular issue in order to make a ruling.

W. argues that our failure to restore him to the classroom results in imminent and irreparable injury because he is in his formative years and his removal from the classroom unfairly stigmatizes him. The school board, however, observes that he is currently enrolled in an educational program at the Harrisburg Institute of Psychiatry and that the district has and will continue to make every effort to assure that he receives all assignments and the necessary materials to complete them. Moreover, the district has acknowledged that it is legally required to continue to provide for the child's education. As the board notes, Commonwealth regulations provide that the parents of an expelled student have 30 days to find an alternate placement for the student in another school, through tutorial or correspondence study, or through another educational program approved by the district superintendent. If such placement is not made, the district is legally required to provide for the student's education. 22 Pa. Code 12.6(e). We have no reason to believe that if W.'s parents are unable to arrange

for an alternate placement, the district will fail in its legal obligation to provide him with an education. On the other hand, we are not prepared to conclude that a tutorial program equates with school attendance for the purpose of resolving whether or not the petitioner will have suffered an irreparable injury. We, in fact, believe otherwise. As with the previous issue, however, a determination of this question is not necessary to our resolution of the instant motion.

At this point in time, we do not believe that a clear right exists on the part of the plaintiff to obtain relief. Thus, a key requirement for issuance of a preliminary injunction is lacking. Given the record thus far adduced, it appears that the school district has acted in keeping with its own procedures as well as the due process requirements promulgated by our appellate courts.

Section 1318 of the Public School Code grants school administrators the right to suspend students for misconduct and grants school boards the right to expel students for such misconduct. The statute provides, in pertinent part:

"Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct.... The board may, after a proper hearing, suspend such child for such time as it may determine, or may permanently expel him. Such hearings, suspension, or expulsion may be delegated to a duly authorized committee of the board, or to a duly qualified hearing examiner, who need not be a member of the board, but whose adjudication must be approved by the board." 24 P.S. §13-1318.

The scope of our review, where a complete record is made before the board, is limited to observing whether constitutional rights were violated or an error of law committed, and whether necessary findings of fact are

supported by substantial evidence. *Porter v. Board of School Directors, Clairton School District,* 67 Pa. Commw. 147, 445 A.2d 1386 (1982). In other words, the test is not whether we, sitting as the school board, would have reached the same result.

Here, the board for the West Shore School District complied with the requirements of the law. By governmental regulation, the board of school directors is authorized to define the types of offenses that would lead to exclusion from school. 22 Pa. Code 12.6. The West Shore School District has, in turn, defined the various types of offenses which may lead to the exclusion of students from attendance in the schools of the West Shore School District. These include:

"(8) Threatening or assuming a threatening attitude toward students or staff members.

"(19) Possession/use of weapons.

"(20) Any single action which creates severe danger to other persons or causes severe disruption to the educational process and which is not already covered in this section or another section of board policy." See West Shore School District Student Discipline Policy.

As we have already observed, it is clearly erroneous for the school board to contend that the replica, which W. brought to school, is a weapon. On the other hand, the decision to expel W. was arrived at based on the assumption that the revolver was a replica and that its possession, notwithstanding, under these specific threatening circumstances nonetheless warranted expulsion. While we may have the opportunity to revisit this issue, either in the context of the ultimate trial of this case in equity or as an administrative agency appeal, we are not satisfied that the plaintiffs' right to relief is so clear as to warrant his reinstatement pending further hearing. The board concluded that the pos-

session of a replica firearm under circumstances in which the student had made threats to shoot someone in the head warranted expulsion. While this student neither used nor possessed an actual weapon, his actions were certainly threatening and/or of a type causing severe disruption to the educational process. Thus, the conduct arguably fell within the ambit of at least two of the grounds for expulsion.

The expulsion in this case extends through the balance of this school year, with an opportunity for W. to be readmitted for his next grade. Given that the weapon was not an operable firearm, this penalty is arguably severe. It is perhaps unfortunate for the plaintiff that this incident occurred at a time when the presence of real weapons in schools has drawn considerable attention. We repeat that the issue is not whether we would have necessarily reached the same result, but whether the result reached was contrary to the law or to the facts.

The question also arises as to whether the school district observed the student's due process rights. Procedural due process in the area of school suspensions and expulsions was first mandated in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). There the Supreme Court said:

"The authority possessed by the state to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the state is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the due process clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause.

"The due process clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, repu-

tation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the clause must be satisfied.... It is apparent that the claimed right of the state to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the constitution." *Id.* at 574-75, 95 S.Ct. at 736, 42 L.Ed.2d at 734-35.

Due process rights have been codified in Pennsylvania and are set forth in 22 Pa. Code 12.8. This section requires notification of the charges in sufficient time to permit the student to prepare for a hearing, the right to be represented by counsel, the right to be presented with names of witnesses against the student as well as copies of the statements, the right to cross-examine, the right to testify and the right to a record. There was compliance with these requirements in this case.

Plaintiff correctly observes that the notice of the hearing sets forth a charge that the student violated a district policy by being "in possession of and displaying a gun and ammunition." While the school board's blurring of the line between what is and is not a real weapon is disingenuous, it is not fatal. The notice for the hearing (at which, incidentally, the child was given a complete and adequate opportunity to be heard) was accompanied by the statements of witnesses which contained specific details of the incident involved and otherwise clearly indicated the subject matter of the hearing. In sum, the child's due process rights were, we believe, adequately protected.

## ORDER

And now, October 29, 1993, for the reasons stated in the opinion filed of even date herewith, the motion of the plaintiffs for preliminary injunction is denied.